## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| POWERWAVE TECHNOLOGIES, INC.,[1] | ) | Case No. 13-10134 (MFW) |
| | ) | *Re: 485* |
| Debtor. | ) | |
| | ) | |

## ORDER: (A) AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (B) GRANTING RELATED RELIEF

Upon consideration of the motion dated February 22, 2013 [*Docket No. 134*] (the "Motion")[2] of Powerwave Technologies, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of orders: (a)(i) approving bidding procedures in connection with the sale of substantially all assets of the Debtor and/or entry into a plan sponsor agreement, (ii) scheduling an auction and a hearing (the "Sale Hearing") to consider the sale of assets and/or entry into a plan sponsor agreement, and (iii) approving the form and manner of notice thereof; (b)(i) authorizing and approving the sale assets free and clear of liens, claims, encumbrances and interests (the "Sale"), (ii) approving the assumption and assignment of executory contracts and unexpired leases; and (c) granting related relief

---

[1] The Debtor's federal tax identification number is 11-2723423.

[2] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the APA (as defined herein) and in the Bidding Procedures Order.

(the "Motion"); the Debtor having conducted an auction for the sale of substantially all of its assets on May 13, 2013 at 10:00 a.m. (prevailing Eastern Time) (the "Auction"); P-Wave Holdings, LLC (the "Purchaser") having submitted the highest or otherwise best offer for the assets auctioned as part of the "IP lot," consisting primarily of the Debtor's patent portfolio (the "IP Assets"), the Purchaser being the successful bidder for the IP Assets, the Purchaser having submitted the second highest or otherwise best offer for the assets consisting of, among other items, accounts receivable and certain intangible assets (the "Receivables Assets", and collectively with the IP Assets, the "Purchased Assets"), and the Purchaser being the back-up bidder for the Receivables Assets, and the Purchased Assets are more fully described in the Asset Purchase Agreement, dated as of May 13, 2013 (the "APA", which APA is Exhibit A to Part II of the Auction Transcript); Moseley Associates, Inc. (the "Successful Bidder") having submitted the highest or otherwise best offer for the assets of the Debtor (exclusive of the IP Assets, but including the Receivables Assets and the M&E Assets) described in its Asset Purchase Agreement, dated as of May 13, 2013, which is Exhibit H to Part II of the Auction Transcript; the joint venture comprised of Counsel RB Capital, LLC, The Branford Group and Maynards Industries (collectively, the "M&E Back-Up Bidders") having submitted the second highest or otherwise best offer for the assets consisting of, among other items, machinery and equipment (the "M&E Assets", and Moseley being the Successful Bidder for the combination of the Receivables Assets and the M&E Assets) described in their Asset Purchase Agreement, dated as of May 13, 2013, which is Exhibit F to Part II of the Auction Transcript and which is subject to a separate order; the Successful Bidder having informed the Debtor that it would not consummate the sale transaction; the Court having

conducted the Sale Hearing on May 15 and 16, 2013, to consider the approval of the Sale and related transactions pursuant to the terms of the APA, substantially in the form annexed to this order (this "Sale Order") as Exhibit A, between the Debtor and the Purchaser; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Motion and the transactions contemplated thereby; and the Court having reviewed and considered the Motion and any objections thereto, and the arguments of counsel and evidence adduced related thereto; and upon the record of the Sale Hearing and the full record of this case, including the record established at the Auction and filed on the docket in the Debtor's chapter 11 case as Docket Nos. 473 and 480 (the "Auction Transcript"); and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its creditors and estate and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    This Court has jurisdiction over the Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).   Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.    Good and sufficient notice of the Motion and the relief sought therein has been given to all interested persons and entities.

D.      A sound business purpose justifies the Sale of the Purchased Assets outside of the ordinary course of business.

E.      An order: (a) approving bidding procedures in connection with the sale of substantially all assets of the Debtor and/or entry into a plan sponsor agreement, (b) scheduling an auction and hearing to consider the sale of assets and/or entry into a plan sponsor agreement, and (c) approving the form and manner of notice thereof was entered on March 4, 2013 [*Docket No. 189*] (the "Bidding Procedures Order"), approving, among other things, the bidding procedures attached thereto as Schedule 1. The Bidding Procedures Order, among other things, established procedures for submitting bids on the Purchased Assets, set April 4, 2013 as the deadline for submitting bids, set April 8, 2013 as the auction date, and set a hearing to approve the sale to successful bidders on April 10, 2013. Pursuant to the (a) notice of extended dates for bid deadline and auction, filed with the Court on April 4, 2013 [*Docket No. 352*]; and (b) notice of extended dates for bid deadline, auction and sale hearing, filed with the Court on April 10, 2013 [*Docket No. 377*], the deadline for submitting bids was extended from April 4, 2013 to May 9, 2013,  May 13, 2013 was set as the auction date, and May 15, 2013 was set as the hearing date to approve the sale to successful bidders.

F.      The Debtor provided good and sufficient notice of the entry of the Bidding Procedures Order and notice of Auction and Sale (the "Notice of Auction") to all parties in interest in this chapter 11 case, as set forth in the affidavits of service at Docket Nos. 201, 215, 321, 370, and 388.  The Debtor also published the Notice of Auction in the Wall Street Journal, National Edition on March 12, 2013 [*Docket No. 278*].  No other

or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale, or the entry of this Sale Order shall be required except as provided herein.

G.    A reasonable opportunity to object and to be heard with respect to the Motion and relief requested therein, including, without limitation, the Sale, was given to all interested persons and entities.

H.    On May 13, 2013, the Debtor conducted the Auction.  The Debtor and its professionals marketed the Purchased Assets to potential purchasers, both before and during this chapter 11 case, as set forth in the Motion and in accordance with the Bidding Procedures Order.  Potential bidders had the full and fair opportunity to submit bids and participate in the Auction on the terms set forth in the Bidding Procedures Order.  As set forth in the Auction Transcript, all of the Purchased Assets were subject to competitive bidding from unaffiliated third party bidders.  The Purchaser submitted the highest or otherwise best bid for the IP Assets offered at the Auction and was the Successful Bidder for the IP Assets.  The Successful Bidder submitted the highest or otherwise best bid for the Receivables Assets offered at the Auction.  The Purchaser submitted the second highest or otherwise best bid for the Receivables Assets offered at the Auction and was the Back-up Bidder for the Receivables Assets.

I.    On May 14, 2013, the Successful Bidder informed the Debtor that it would not consummate the sale transaction.  As a result and in accordance with the Bidding Procedures Order, the Debtor sought approval of the Back-up Bid submitted by the Purchaser for the Receivables Assets at the Sale Hearing.

J.      Entry of an order approving the APA and the transactions contemplated thereby, in the form and substance of this Sale Order, is a necessary and appropriate condition precedent to the Purchaser's consummation of the Sale.

K.      The consideration to be provided by the Purchaser: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets identified in the APA; (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act (7A part II, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)) or any similar laws of any state or other jurisdiction whose law is applicable to the contemplated transactions; and (iv) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other practically available alternative.

L.      Consummation of the Sale contemplated by the Purchaser's APA will provide the highest and otherwise best value for the Purchased Assets and is in the best interests of the Debtor, its creditors and estate.

M.      Entry into the APA and consummation of the transactions contemplated thereby constitute the exercise of the Debtor's sound business judgment and fiduciary duties and such acts are in the best interests of the Debtor, its creditors and estate.

N.      The transactions contemplated by the APA are undertaken by the Debtor and the Purchaser at arms' length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and as such, is entitled to all of the protections afforded thereby and otherwise has proceeded in good faith in all respects

in connection with this proceeding in that:  (a) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser did not in any way induce or cause the chapter 11 filing of the Debtor; (c) based on the Auction Transcript, the Purchaser made the highest or otherwise best bid for the IP Assets after competitive bidding with other arms'-length bidders; (d) based on the Auction Transcript, the Successful Bidder made the highest or otherwise best bid for the Receivables Assets and the Purchaser was the Back-up Bidder to the Successful Bidder for the Receivables Assets; and (e) the negotiation and execution of the APA and any other agreements or instruments related thereto was in good faith and an arms'-length transaction between the Purchaser and the Debtor.  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Purchased Assets shall not affect the validity of the Sale of the Purchased Assets to the Purchaser.

O.     The Debtor and the Purchaser (including, as applicable, its affiliates, partners, principals, shareholders, or representatives) have not engaged in any conduct that would permit the APA or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

P.     The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.

Q.     The Purchaser (including, as applicable, its affiliates, partners, principals, or shareholders or its representatives) is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

PAC 1106430v.3

R.    The Sale may not be avoided under section 363(n) or any other section of the Bankruptcy Code.

S.    The Debtor is the sole and lawful owner of the Purchased Assets, and held good title thereto, immediately prior to the Closing.  Except as permitted under the express terms of the APA, the consummation of the Sale pursuant to the APA will be a legal, valid and effective Sale of the Purchased Assets and will vest the Purchaser (and its designees or assignees, as applicable) with all right, title, and interest of the Debtor and its bankruptcy estate in and to the Purchased Assets subject to the APA free and clear of all liens, claims, encumbrances and interests, including, without limitation, any such liens, claims, encumbrances and interests (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Debtor's, the Debtor's estate or the Purchaser's interest in such Purchased Assets, or any similar rights, or (ii) relating to taxes or any other liabilities, arising under or out of, in connection with, or in any way relating to, the Purchased Assets, the Debtor, the Debtor's estate, or its respective operations or activities prior to the Closing date.

T.    A Sale of the Purchased Assets other than free and clear of liens, claims, encumbrances and interests would be of substantially less benefit to and would adversely affect the Debtor's bankruptcy estate.  The sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The Sale does not constitute a *sub rosa* chapter 11 plan.

U.    The Purchased Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of

the Bankruptcy Code.  The Debtor has all right, title and interest in, to and under the Purchased Assets to transfer and convey the Purchased Assets as contemplated by the APA.

        V.     With respect to all parties asserting liens, claims, encumbrances and interests in, to, or against the Purchased Assets, the Sale complies with all the requirements of section 363(f) of the Bankruptcy Code.  With respect to each interest in the Purchased Assets:  (i) applicable non-bankruptcy law permits the sale free and clear of such interest; (ii) the holder of such interest consents to the Sale; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the Purchased Assets; (iv) such interest is in bona fide dispute; or (v) the holder of such interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  Specifically, the Debtor's secured lenders and any other known creditors having liens on the Purchased Assets have thoroughly reviewed the Debtor's alternatives and have consented to the Sale pursuant to section 363(f) of the Bankruptcy Code.

        W.     All parties with liens, claims, encumbrances and interests in or against the Purchased Assets identified to be sold under the APA, if any, who did not object to the Motion and the relief requested therein, who did not request adequate protection of any possessory right, or who withdrew their objections to the Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code; and all parties with liens, claims, encumbrances and interests against the Purchased Assets who objected to the Motion, but who did not withdraw any such objection, can be compelled to accept a monetary satisfaction of their liens, claims, encumbrances and interests within

PAC 1106430v.3

the meaning of section 363(f)(5) of the Bankruptcy Code, and in each case, are enjoined from taking any action against any of the Purchasers, their affiliates or any agent of the foregoing to recover any claim which such person or entity has solely against the Debtor, or any of its respective affiliates or with respect to any of the Purchased Assets.

X.    By virtue of the APA or otherwise, the Purchaser will not acquire any liabilities of the Debtor.

Y.    Without limiting the generality of the foregoing, the Purchaser would not have entered into the APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and creditors, if the Sale of the Purchased Assets were not free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever, or if the Purchaser would or in the future could, be liable for any liens, claims, encumbrances and interests.

Z.    The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

AA.    Upon entry of this Sale Order, the Debtor shall have full power and authority to consummate the Sale contemplated by the APA.  The APA and the Sale have been duly and validly authorized by all necessary action of the Debtor and no shareholder vote, board resolution or other corporate action is required of the Debtor for the Debtor to consummate such Sale or the other transactions contemplated in the APA.

BB.    Cause has been shown as to why this Sale Order should not be subject to the stay provided by Bankruptcy Rules 6004 and 6006.

**1.  NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion, the APA, and the transactions contemplated thereby shall be, and hereby are, granted and approved in all respects as modified by this Sale Order.

2.      The Debtor is authorized to close, consummate and comply with the APA and all other agreements and documents related to and contemplated thereby (collectively, the "Sale Documents"), which Sale Documents hereby are authorized and approved in all respects and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the APA.

3.      All objections and responses to the Motion are hereby resolved in accordance with the terms of this Sale Order and as set forth in the record at the Sale Hearing.  To the extent such objections or responses were not otherwise overruled, withdrawn, waived, settled or resolved, they, and all reservations of rights included therein, are hereby overruled and denied; provided, however, that the foregoing shall not prejudice any objection timely filed relating to cure costs and/or adequate assurance of future performance for executory contracts and unexpired leases that are not being assumed and assigned pursuant to this Sale Order.

4.      The Purchaser's offer for the Purchased Assets, as embodied in its APA and in accordance with the terms of the Bidding Procedures Order, is the highest or otherwise best offer for the Purchased Assets, and the offer is hereby approved.

5.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Sale of the Purchased Assets by the Debtor to the Purchaser, and the transactions related thereto, upon the Closing under the APA, are authorized and approved in all respects.

6.      Subject to the payment of the consideration provided for in the APA to the Debtor by the Purchaser pursuant to section 363 of the Bankruptcy Code, the Sale of the Purchased Assets by the Debtor to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title and interest of the Debtor in and to the Purchased Assets free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, effective as of the closing of the transactions under the APA (each, a "Closing").

7.      To the greatest extent available under applicable law, the Purchaser shall be authorized, as of its respective Closing date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Purchaser as of the Closing date.  Pursuant to section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of the Debtor's chapter 11 case or the consummation of the transaction contemplated by the APA.

8.      Pursuant to section 363(f) of the Bankruptcy Code, the Sale of the Purchased Assets shall be free and clear of all liens, claims, encumbrances and interests and all liabilities of the Debtor whether known or unknown, including, but not limited to, liens, claims, encumbrances and interests asserted by any of the Debtor's creditors, vendors, suppliers, employees, executory contract counterparties, or lessors.  The Purchaser shall not be liable in any way for any claims that any of the foregoing parties

or any other third party may have against the Debtor. Any and all valid and enforceable liens, claims, encumbrances and interests on, against or in the Purchased Assets, including those asserted by the Debtor's lenders, shall be transferred, affixed, and attached to the net proceeds of the Sale with the same validity, priority, force and effect such liens, claims, encumbrances and interests had on the Purchased Assets immediately prior to the Sale and subject to the rights, claims, defenses, and objections, if any, of the Debtor and all interested parties with respect to any such asserted liens, claims, encumbrances and interests. The Sale of the Purchased Assets to the Purchaser shall vest the Purchaser with all the right, title and interest of the Debtor to the Purchased Assets free and clear of liens, claims, encumbrances and interests.

9.     The Purchaser has not assumed or otherwise become obligated for any of the Debtor's liabilities, and the Purchaser has not purchased any of the "Excluded Assets," as defined the APA.

10.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtor, the Debtor's affiliates, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax, and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any liens, claims, encumbrances and interests, in or with respect to the Debtor or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Purchased Assets, the operation of the Debtor's business prior to the Closing date under the APA or the transfer

of the Purchased Assets to the Purchaser (including any claim for any tax arising under a bulk sales or similar act), shall be forever barred, and estopped, from asserting, prosecuting or otherwise pursuing such liens, claims, encumbrances and interests against the Purchaser, or the Purchased Assets; including claims under section 365(n) of the Bankruptcy Code against the Purchaser with respect to the Purchased Assets.

11.    If any person or entity that has filed any financing statement, mortgage, mechanic's lien, *lis pendens* or other document or instrument evidencing liens with respect to any of the Purchased Assets shall have failed to deliver to the Debtor and the Purchaser prior to the Closing of the APA, in proper form for filing and executed by the appropriate entity or entities, termination statements, instruments of satisfaction and releases of all liens, claims, encumbrances or interests which such person or entity has with respect to the Purchased Assets, then (a) the Debtor is authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity and (b) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances and interests in the Purchased Assets as of the Closing of the APA.

12.    This Sale Order:  (a) is and shall be effective as a determination that, upon Closing, liens existing as to the Purchased Assets conveyed to the Purchaser have been and hereby are adjudged and declared to be unconditionally released, discharged and terminated; and (b) is and shall be binding upon and govern the acts of all entities, including, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units,

governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets conveyed to the Purchaser.

13.     The provisions of this Sale Order authorizing the sale of the Purchased Assets free and clear of liens shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.   However, the Debtor and the Purchaser, and their respective officers, employees, and agents, are authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the APA and this Sale Order.

14.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Sale Order.

15.     After the date of Closing of the APA, no person or entity, including, without limitation, any federal, state or local taxing authority, may:  (a) attach or perfect liens or a security interest against any of the Purchased Assets on account of; or (b) collect or attempt to collect from the Purchaser or any of its affiliates, any tax (or other amount alleged to be owing by the Debtor) (i) for any period commencing before

and concluding prior to the date of Closing or (ii) assessed prior to and payable after the date of Closing.

16.     This Sale Order shall be binding upon and govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons or entities who may he required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report to or insure title or state of title in or to any of the Purchased Assets.

17.     The Purchaser shall not assume, nor be deemed to assume or in any way be responsible for any liability or obligation of the Debtor and/or its estate including, but not limited to, any bulk sales law, successor or transferee liability, liability or responsibility for any claim against the Debtor or against any insider of the Debtor or similar liability.  The Motion and notice thereof contains sufficient notice of such limitation in accordance with the Bankruptcy Rules.

18.     The Purchaser is a good faith purchaser entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code; accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Purchased Assets shall not affect the validity of the Sale of the Purchased Assets to the Purchaser.

19.     The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable, and shall be deemed for all purposes to

constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided under section 363(n) or any other section of the Bankruptcy Code.

20.    With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be sole and sufficient evidence of the transfer of title to the Purchaser, and the Sale consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including without limitation, all foreign affiliates and foreign receivers, filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

21.    This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the APA, the Bidding Procedures Order, and this Sale Order in all respects and further to hear and determine any and all disputes between the Debtor and/or the Purchaser; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA, the Bidding Procedures Order, and this Sale Order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the

exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

22.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, in accordance with the terms thereof without further order of the Court.

23.     From and after the date hereof, the Debtor shall act in accordance with the terms of the APA and the Debtor, to the extent it already has not done so, shall execute any Sale Document at or prior to Closing.

24.     The failure specifically to include any particular provisions of the APA in this Sale Order shall not diminish or impair the effectiveness of such provisions.

25.     To the extent of any inconsistency between the provisions of this Sale Order and the APA, or any documents executed in connection therewith, the provisions contained in this Sale Order shall govern.

26.     The provisions of this Sale Order are nonseverable and mutually dependent.

27.     This Sale Order shall inure to the benefit of the Purchaser, the Debtor, and their respective successors and assigns, including but not limited to any chapter 11 or chapter 7 trustee that may be appointed in the Debtor's case and shall be binding upon any trustee, party, entity or fiduciary that may be appointed in connection with the Debtor's chapter 11 case or any other or further case involving the Debtor, whether under chapter 7 or chapter 11 of the Bankruptcy Code.

28.    Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Debtor's chapter 11 case, or in any subsequent or converted case of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.  The provisions of this Sale Order and any actions taken pursuant hereto shall survive the entry of any order which may be entered confirming any chapter 11 plan of the Debtor, converting the Debtor's case from chapter 11 to a case under chapter 7 of the Bankruptcy Code, or dismissing the Debtor's chapter 11 case.

29.    The transactions contemplated by the APA shall be exempt from any so-called "bulk-sale" law in all necessary jurisdictions arising as a result of or in connection with the Debtor's Sale and transfer of the Purchased Assets to the Purchaser.

30.    Nothing in this Sale Order shall act to approve or be deemed to be an approval of (i) any sale by the Debtor of any assets or property (including, without limitation, any patents, software, intellectual property, or contract rights) owned by Powerwave Cognition, Inc. ("PCI") and/or Cognition Networks, LLC ("CN") or (ii) any assumption and/or assignment of any contract of PCI or CN (collectively, the "PCI/CN Contracts"), including, without limitation, that certain Agreement for Sale of Mobile Ad-Hoc Network Technology, dated June 4, 2007 (as at time amended, the "Cognition Agreement"), originally between Raytheon Company ("Raytheon") and CN (and purported to be assigned to PCI).  None of the assets sold by or to be transferred by the Debtor to the Purchaser shall include any "MANET IP" as defined in the Cognition Agreement or any PCI/CN Contract.  Nothing in this Sale Order shall act to approve or be deemed an approval of (i) any assumption and/or assignment of any contract between

Raytheon and the Debtor or any other person or entity or (ii) any sale or assignment of any such contract to the Purchaser or any other person or entity.

31.    Notwithstanding anything to the contrary herein or in the APA, any rights or defenses, including any setoff or recoupment rights and defenses, that Verizon Business Network Services Inc. and/or its affiliates (collectively, "Verizon") or Free Mobile SAS ("Free Mobile") may have against the Debtor are hereby preserved and are unaffected by this Sale Order or the APA.  To the extent that this Sale Order or the APA transfers any accounts receivable or any other asset or document which purportedly evidences a payment obligation or credit obligation owed by Verizon or Free Mobile to the Debtor, Verizon and Free Mobile's rights and defenses with respect to such alleged obligations, including rights of setoff and recoupment, are hereby preserved and remain unaffected and fully enforceable.

32.    The Debtor and Cellco Partnership and Washington SMSA Limited Partnership, Sprint/United Management Company, Nextel Operations, Inc., New Cingular Wireless PCS, LLC by and through its Manager AT&T Mobility Corporation, and T-Mobile Northeast LLC (the "Carriers") are parties to that certain Turnkey Equipment Purchase, System Design and Construction Services Agreement dated June 18, 2009, as amended by the First Amendment, the Second Amendment, and the Third Amendment, (collectively the "Turnkey Agreement").[3]  Under the Turnkey Agreement, the Debtor agreed to build and maintain a wireless communications network for the

---

[3]  With the exception of capitalized terms "Sale Order," "Purchased Assets," and "APA," capitalized terms not otherwise defined in paragraphs 32 through 39 shall have the meaning ascribed to them in the Turnkey Agreement.

Carriers in Washington, D.C. Metro subway system which is operated by the Washington Metropolitan Transit Authority ("WMATA") herein referred to as the "Project."

33.    The Debtor has rejected the Turnkey Agreement pursuant to an Interim Rejection Order, effective February 22, 2013 (the "Interim Rejection Order"). The Debtor may assert certain claims against the Carriers, and the Carriers may assert certain claims against the Debtor arising out of, related to, or in connection with the Turnkey Agreement (collectively, the "Claims").

34.    The Carriers contend that title to the Work and the Products has already transferred to the Carriers or WMATA under the Turnkey Agreement, and the Debtor disputes that contention (the "Title Dispute").

35.    The Carriers contend that the Turnkey Agreement provides under certain circumstances certain rights to the Carriers upon termination of the Turnkey Agreement (the "Transfer Rights"), including, without limitation, the following: taking possession of the site and all materials and equipment thereon and finishing the Project; transition of all Work and delivery of all documents (plans, AutoCAD files, etc.), Subcontracts and other assets relating to the Work, including access to all required technology to allow a smooth transition of the Work; self-performing on behalf of the Debtor; transferring sole title to any Work or Products covered by Milestone payments; and receipt of title to all Work. The Debtor disputes these contentions.

36.    The Debtor also owns, possesses, or has rights to certain components and equipment (collectively, the "Cable and O&M Equipment") required to complete the Project and support on-going operation and maintenance ("O&M") of the network, including radiating coaxial cable and connectors purchased by the Carriers,

spare parts, tools, and other equipment such as repeater spares, battery packs and air filters, and the plans, designs, and engineering created or utilized by the Debtor for the Project.

37.     Under the Interim Rejection Order, the Debtor is required to continue to monitor and maintain the system and has done so through third party monitoring and maintenance contracts (the "M&M Contracts").    Under the Interim Rejection Order, the Carriers must now pay the maintenance and monitoring subcontractors directly.

38.     The Debtor was required to and has maintained in place certain required Bonds - Performance Bond CMS 242743 and Payment Bond CMS 242743, which Bonds are secured by $5,000,000 of cash.

39.     Notwithstanding anything to the contrary herein or in the APA, the Turnkey Agreement, including, without limitation, the Claims, the Title Dispute, the Transfer Rights, the Cable and O&M Equipment, the M&M Contracts, and the Bonds and cash securing the Bonds, and any other Work, Products, or equipment associated with the Project are excluded from and not part of the Purchased Assets under the APA.

40.     Notwithstanding anything to the contrary in this Sale Order, the separate order relating to the bid of the M&E Back-Up Bidders, the APA between the Debtor and the Purchaser, or the asset purchase agreement between the Debtor and the M&E Back-Up Bidders, as applicable, the limited objection of Andrew Corporation [*Docket No. 323*] is resolved pursuant to the following: (a) the Debtor is not assuming and assigning, and the Purchased Assets do not include, the Debtor's licenses arising under that certain Patent Cross License Agreement between the Debtor and Andrew

Corporation, dated March 30, 2006 (the "Patent Cross License Agreement"), and (b) the transfer of the Debtor's patents being transferred to Purchaser shall not be free and clear of Andrew Corporation's license arising under the Patent Cross License Agreement.

      41.    The transactions contemplated by the APA shall be exempt from any so-called "bulk-sale" law in all necessary jurisdictions arising as a result of or in connection with the Debtor's Sale and transfer of the Purchased Assets to the Purchaser.

      42.    Nothing in this Sale Order shall act to approve or be deemed an approval of any sale or assignment of any Contract (as defined in the APA) to the Purchaser or any other person or entity absent further order of this Court.

      43.    Nothing in this Sale Order or the APA shall be construed as permitting the transfer of any Mentor Graphics Corporation software and related products licensed to the Debtor pursuant to those certain "Licenses" described in Mentor Graphics Corporation's cure amount/assignment objections [*Docket Nos. 332 and 448*] unless the prior written consent of Mentor Graphics Corporation is first obtained, and any such transfer shall be subject to any agreed terms and conditions on the transfer of such software and related products, including payment of cure and provision of adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code, as applicable.

      44.    Nothing in this Sale Order or the APA shall be construed as permitting the transfer of any Microsoft software and related products licensed to the Debtor pursuant to that certain "License" described in Microsoft's cure amount/assignment objection [*Docket No. 340*] unless the prior written consent of Microsoft is first obtained, and any such transfer shall be subject to any agreed terms and

conditions on the transfer of such software and related products, including payment of cure and provision of adequate assurance of future performance pursuant to section 365, as applicable.

45.    Because time is of the essence, this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and any stay of (a) orders authorizing the sale, use, or lease of property of the estate, as set forth in Bankruptcy Rule 6004(h), any applicable provisions of the Local Rules, or otherwise, (b) proceedings to enforce a judgment, as set forth in Bankruptcy Rule 7062, any applicable provisions of the Local Rules, or otherwise, and (c) any other kind, shall not apply to this Sale Order.

46.    The Debtor is authorized to close the Sale under the APA immediately upon entry of this Sale Order.

Dated:    _____, 2013
          Wilmington, Delaware

                              _____
                              Mary F. Walrath
                              United States Bankruptcy Judge

PAC 1106430v.3