IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| POWERWAVE TECHNOLOGIES, INC.,[1] | ) Case No. 13-10134 (MFW) |
| Debtor. | ) **Hearing Date: TBD**<br>) **Objection Deadline: TBD** |

## MOTION FOR ENTRY OF AN ORDER CONVERTING CASE TO CHAPTER 7 AND IMPLEMENTING SETTLEMENT AMONG DEBTOR, P-WAVE HOLDINGS, LLC AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Powerwave Technologies, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), converting the Debtor's chapter 11 case to a chapter 7 case and implementing the terms of the settlement among the Debtor, its secured lender P-Wave Holdings, LLC ("P-Wave"), and the Official Committee of Unsecured Creditors (the "Committee"), the terms of which settlement were read into the record at the May 16, 2013 hearing on the sale of substantially all of the Debtor's assets (the "Sale Hearing"), pursuant to sections 105(a) and 1112 of title 11 of the United States Code (the "Bankruptcy Code") and rules 1017, 2002, 9006, 9013 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Debtor respectfully represents as follows:

### Jurisdiction

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

---

[1] The last four digits of the Debtor's federal tax identification number are 3423.

PAC 1108786v.1

3. Venue of this chapter 11 case (the "Chapter 11 Case") in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a) and 1112 of the Bankruptcy Code and Bankruptcy Rules 1017, 2002, 9006, 9013 and 9019.

### Background

5. On January 28, 2013 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. On February 7, 2013, the Office of the United States Trustee appointed the Committee.

6. The factual background relating to the Debtor's commencement of its Chapter 11 Case is set forth in detail in the *Declaration of Ronald J. Buschur, [Former] President and Chief Executive Officer of Powerwave Technologies, Inc., in Support of the Debtor's First Day Motions and Applications* [Docket No. 24], filed on January 30, 2013 in the Debtor's Chapter 11 Case and incorporated herein by reference.

7. On May 17 and 22, 2013, the Court entered orders [*Docket Nos. 491, 493 and 519*] (collectively, the "Sale Orders") approving, respectively: (a) a sale to P-Wave of certain of the Debtor's assets, consisting primarily of the Debtor's patent portfolio, accounts receivable and certain intangible assets, for a credit bid of $10,200,000; (b) a sale to a joint venture comprised of Counsel RB Capital, LLC, The Branford Group and Maynards Industries (collectively, "CRB") of certain of the Debtor's tangible assets, consisting primarily of inventory, machinery and equipment, for a cash bid of $6,600,000; and (c) a sale to Teak Capital Partners Ltd. ("Teak") of 100% of the Debtor's equity interests in its affiliate Powerwave Technologies (Thailand) Ltd. and certain related assets, for a cash bid of $50,000.

8. The Debtor's debtor-in-possession loan matured, and its use of cash collateral expired, on May 17, 2013 and, on that day, the Debtor terminated all but a handful of employees. The sales to P-Wave and CRB closed on May 22, 2013 and the sale to Teak closed on May 24, 2013. Since the May 22, 2013 closings of the P-Wave and CRB sales, the Debtor has transferred approximately $7,066,468 to P-Wave, consisting of the following: (a) $6,275,388.31 of proceeds from the sale of assets to CRB, net of $324,611.69 paid to the Debtor's investment banker; (b) $92,438.58 in realized accounts receivable collected by the Debtor between May 14 and 17, 2013 (prior to the P-Wave sale closing); (c) $648,641.88 in realized accounts receivable collected by the Debtor between May 18 and May 22, 2013 (prior to the P-Wave sale closing); and (d) approximately $50,000 in realized accounts receivable collected by the Debtor after the P-Wave sale closing. P-Wave agreed to provide the Debtor with $150,000 of funding from May 18, 2013 through May 31, 2013. As of the date of filing this Motion, the Debtor has approximately $2.4 million of cash on hand. Upon approval of this Motion, the Debtor proposes (x) to retain and transfer to the chapter 7 trustee $1,050,000 of the cash on hand to fund the Administrative Reserve, the GUC Carve-Out and the Trustee Fund (each term as defined below) and (y) to transfer to P-Wave the balance of the cash held by the Debtor.

## Summary of Relief Requested

9. On May 16, 2013, the Debtor, P-Wave and the Committee settled their disputes relating to the sale of substantially all of the Debtor's assets – on the record at the Sale Hearing – with an arrangement that will provide a return to the Debtor's general unsecured creditors through a "carve-out" from the proceeds realized from the sale of P-Wave's collateral, that will provide "seed money" for a chapter 7 trustee to administer the chapter 7 estate and that will provide for a sharing between P-Wave and general unsecured creditors of monies that a chapter 7

trustee might have available to distribute to general unsecured creditors under section 726(a)(2) of the Bankruptcy Code (the "Settlement"). The Settlement announced on the record was to be implemented either through a chapter 11 liquidating plan, a chapter 7 conversion or a dismissal of the Debtor's Chapter 11 Case. The parties could not reach agreement on sufficient funding of the Debtor's Chapter 11 Case to propose and confirm a chapter 11 liquidating plan, so the Settlement will be implemented through a conversion to chapter 7. The Settlement resolved the objections of the Committee [*Docket No. 472*] and Deutsche Bank Trust Company, indenture trustee for holders of the Debtor's 2.75% Convertible Senior Subordinated Notes due 2041 [*Docket No. 475*], to the sale and paved the way for the Court's entry of the Sale Orders.

10. By this Motion, the Debtor seeks entry of an order converting the Debtor's Chapter 11 Case to a case under chapter 7 to conclude the Debtor's Chapter 11 Case and to implement the Settlement.

11. The Debtor requests that the Order granting this Motion explicitly be binding on any subsequently-appointed or elected chapter 7 trustee, so that the parties are not denied the benefit of their bargain. Additionally, the Debtor requests that any order converting this case explicitly provide that $650,000 of sale or P-Wave collateral proceeds shall remain in the Debtor's estate and shall solely be used by the chapter 7 trustee to satisfy allowed chapter 11 administrative expenses (excluding chapter 11 fees and expenses incurred by the Debtor and Committee professionals, which fees and expenses were subject to a professional fee carve-out, budget and fee escrow established pursuant to cash collateral and debtor-in-possession financing orders entered in this proceeding) (the "Administrative Reserve"), with any unused portion of the Administrative Reserve refunded by the chapter 7 trustee to P-Wave.

## The Settlement

12. The economic terms of the Settlement, as read into the record at the Sale Hearing, are:

   a. A carve-out of $150,000 of sale or P-Wave collateral proceeds shall be paid to a trust for distribution to the Debtor's general unsecured creditors (the "GUC Carve-Out").

   b. P-Wave shall fund the trust with an additional $250,000 carve-out from sale or P-Wave collateral proceeds (the "Trustee Fund"), to fund fees and expenses relating to the prosecution of claims and causes of action of the Debtor and the Debtor's estate, to the extent such claims or causes of action were not sold pursuant to the Sale Orders (collectively, "Causes of Action"), including, without limitation, those claims and causes of action arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 or 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws (collectively, "Avoidance Actions").

   c. Proceeds realized from the prosecution of the Causes of Action first will be used to pay claims in accordance with section 726(a)(1) of the Bankruptcy Code and the proceeds that otherwise would be used to pay claims in accordance with section 726(a)(2) of the Bankruptcy Code are subject to the following distribution waterfall (the "Agreed Waterfall"):

      i. Proceeds up to $250,000 shall be distributed to P-Wave;

      ii. Proceeds between $250,001 and $2,500,000 shall be distributed 80% to P-Wave and 20% to creditors other than P-Wave holding claims subject to distribution under Section 726(a)(2) of the Bankruptcy Code;

      iii. Proceeds between $2,500,001 and $5,000,000 shall be distributed 75% to P-Wave and 25% to creditors other than P-Wave holding claims subject to distribution under Section 726(a)(2) of the Bankruptcy Code;

      iv. Net recoveries in excess of $5,000,001 shall be distributed 40% to P-Wave and 60% to creditors other than P-Wave holding claims subject to distribution under Section 726(a)(2) of the Bankruptcy Code; and

      v. P-Wave may not recover in the aggregate in excess of 150% of the amount of P-Wave's claim against the Debtor, after

> reduction for P-Wave's credit bid, for payments made to P-Wave from the Debtor's estate, and for proceeds realized by P-Wave from the CRB sale and from other collateral collections.

A copy of the relevant portion of the transcript from the Sale Hearing is attached hereto as **Exhibit B.**

### Basis for Relief

13.  Section 1112(a) of the Bankruptcy Code provides that "the debtor may convert a case under this chapter to a case under chapter 7 of [the Bankruptcy Code] unless – (1) the debtor is not a debtor in possession; (2) the case originally was commenced as an involuntary case under this chapter; or (3) the case was converted to a case under this chapter other than on the debtor's request." 11 U.S.C. § 1112(a). A chapter 11 debtor has an absolute right, therefore, to convert its case to a case under chapter 7 of the Bankruptcy Code.

14.  None of the exceptions to the Debtor's right to convert its Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code exist here. On the contrary, given that the parties cannot agree on a budget to fund the chapter 11 proceeding, conversion of the Chapter 11 Case to one under chapter 7 is one of only two remaining alternatives to implement the Settlement. Conversion of the Chapter 11 Case will enable a trustee to collect and liquidate the remaining assets of the Debtor's estate, which will include Causes of Action, including Avoidance Actions, excess collateral securing letters of credit, excess collateral securing claims of a surety that has issued surety bonds, proceeds of inventory located in third-party warehouses and proceeds realized from the liquidation of foreign subsidiaries. The Debtor, however, believes that it is fair, equitable, just and appropriate that conversion be conditioned upon entry of an order establishing the Administrative Reserve, the GUC Carve-Out the Trustee Fund, and approving the Agreed Waterfall.

### Notice

15. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Committee; (c) counsel for P-Wave; and (d) all other parties requesting notice pursuant to rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtor submits that no further notice of the Motion is necessary or required.

### No Prior Request

16. No prior motion for the relief requested herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and granting such other and further relief as may be equitable and just.

Dated: May 30, 2013
Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ R. Stephen McNeill*
Laurie Selber Silverstein (DE Bar No. 2396)
Jeremy W. Ryan (DE Bar No. 4057)
R. Stephen McNeill (DE Bar No. 5210)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

-and-

**PROSKAUER ROSE LLP**
Mark K. Thomas
**Peter J. Young**
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

PAC 1108786v.1

-and-

**PROSKAUER ROSE LLP**
Jared Zajac
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Co-Counsel for Debtor and Debtor in Possession*